UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION


FILED
JUN 29 2012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 12-30056-RAL |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS AND EVIDENCE |
| BARRY ALLMAN, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUMMARY

Two people were shot during a fight that occurred on the Rosebud Indian Reservation. A vehicle, containing Barry Allman, fled the locale after shots were fired. Tribal police located and stopped the vehicle. While outside of it, Allman made inculpatory statements and then additional ones, later on, while being interviewed by federal and tribal agents. He seeks now to suppress his statements and the evidence seized from the vehicle during a warrantless roadside search. Because the statements and evidence were not illegally obtained, the Court recommends that Allman's suppression motion be denied.

## BACKGROUND

On May 3, 2012, Rosebud Sioux Tribe law enforcement received a call that someone had been shot and injured in Parmelee, South Dakota and that the suspects involved in the

shooting had left the scene in a white Oldsmobile Alero. Mark Kettell, a special agent with the Tribe, responded to the call and eventually stopped a white Pontiac Grand Prix that had passed him at a high rate of speed and had momentarily veered off of the highway.

As he pulled up, Kettell observed a man, later identified as Allman, walking away from the car. Kettell got out of his vehicle, drew his side arm and pointed it at Allman. Seconds later, Allman went to the ground when Robert Sedlmajer, another tribal special agent, inadvertently discharged a rifle in his patrol car nearby. Upon confirming that the discharge was accidental, Kettell approached Allman, who was still laying on the ground, and handcuffed him.

While being escorted to another officer's patrol car, Allman told Kettell that he had thrown the gun out the window by a tree. Kettell stopped Allman right away and Mirandized him before he could say anything more. Allman said that he understood his rights and agreed to answer questions.

Kettell asked Allman where the gun was. Allman replied that he threw the gun out of the window on a dirt road by a big tree. Kettell then asked Allman if he would take Kettell and fellow officers to where the gun was, but Allman refused.

Kettell had been told that there were two other occupants (besides Allman) in the Grand Prix, both of whom were still at large and might be armed. Kettell's concerns and suspicions about the gun swelled when he observed two live rounds of nine-millimeter ammunition on the front passenger seat floor board of the car. Seeing this, he proceeded to search the vehicle, but did not find a gun in it.

Around midnight that same night, Allman was booked into the Rosebud jail on the tribal offense of aggravated assault. Just before 2:30 a.m., FBI Agent Megan Breining and Kettell met with Allman in Sedlmajer's office. Breining advised Allman of his *Miranda* rights and he signed a written waiver of them. Agents thereafter interviewed him for about half an hour. During the interview, he made incriminating statements about shooting the gun and throwing it out the window of the Grand Prix while sitting in the passenger seat of the vehicle.

The following day, May 4, 2012, at approximately 1:35 p.m., Breining and Kettell interviewed Allman a second time. Prior to doing so, Breining again advised Allman of his rights, and he consented to additional questioning. This interview lasted roughly 10 minutes and he made further incriminating statements during it.

Within four days, Allman was charged federally (by indictment) with the felony offenses of assault with a dangerous weapon, assault resulting in serious bodily injury and discharging, brandishing, carrying or possessing a firearm during and in relation to a crime of violence. He then filed a motion seeking to suppress his statements to Kettell, the ammunition found in the floor board of the Grand Prix and his statements to Breining and Kettell during the first interview on May 4. The Government responded in writing to the motion, resisting the same.

The Court held an evidentiary hearing at Allman's request. Two witnesses testified at the hearing and seven exhibits were received into evidence.

## MAY 3 STATEMENTS AND MIRANDA

At the outset, Allman claims that the statements he first made to Kettell, concerning the whereabouts of the gun, were obtained in violation of *Miranda*. He also claims that his statements to Kettell, following the *Miranda* advisement minutes later, should be suppressed because his *Miranda* waiver was involuntary under the circumstances.

### A. Pre-*Miranda* Statement

Under *Miranda*, the Government is prohibited from using statements made during custodial interrogation unless the suspect has been previously advised of his Fifth Amendment privilege against compulsory self-incrimination and right to an attorney.[1] But because "[v]olunteered statements of any kind are not barred by the Fifth Amendment, *Miranda* concerns do not arise in the absence of police interrogation."[2] Interrogation is not limited to "express questioning" for it also includes "any words or actions that the police should know are reasonably likely to elicit an incriminating response."[3]

Allman's statement – that he had thrown the gun out the window by a tree – was made spontaneously and without any interrogation within the meaning of *Miranda*[4].

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[2] *Id.*, 384 U.S. at 478.

[3] *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see also United States v. Hatten*, 68 F.3d 259, 262 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996).

[4] *See* Mot. Hrg. Tr. 9-10, 19-21, 36 (June 13, 2012).

Kettell did not initiate the conversation when he and Allman first met.[5] Nor did Kettell question Allman in an effort to draw out an inculpatory response from him.[6] Because Allman's statement was volunteered and unsolicited, it fell outside the protection of *Miranda* so as to make warnings unnecessary. The statement is therefore admissible as substantive evidence at trial.[7]

**B. Post-*Miranda* Statements**

A criminal suspect, after being warned, may waive his *Miranda* rights. But the waiver must be knowing, voluntary and intelligent, which means, it must be "the product of a free and deliberate choice rather than intimidation, coercion or deception" and the suspect must have a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[8] The totality of the circumstances surrounding the interrogation guides the determination of whether a waiver was valid.[9]

Preliminarily, it should be observed what Allman does not argue: (1) that he was either improperly advised of his *Miranda* rights or not informed of them at all; and (2) that

---

[5]*See id.*

[6]*See id.*

[7]*See United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *United States v. Waloke*, 962 F.2d 824, 829 (8th Cir. 1992); *United States v. LaRoche*, No. CR 08-30056-01-KES, 2008 WL 4224782 at *5 (D.S.D. Sept. 9, 2008); *United States v. Tail*, No. CR 04-50026-01-KES, 2005 WL 2114227 at *3 (D.S.D. Aug. 31, 2005), *aff'd*, 459 F.3d 854 (8th Cir. 2006).

[8]*Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

[9]*Id.*

his *Miranda* waiver was without the requisite knowledge and intelligence to be valid.[10] He does maintain, however, that his waiver was involuntary, largely because it occurred on the heels of his earlier, un-*Mirandized*, statement to Kettell.[11]

The same analysis concerning the voluntariness of a suspect's statements under the Fifth Amendment applies to determine whether the suspect's *Miranda* waiver was voluntary.[12] Under either analysis, "[a]bsent evidence that the [suspect's] will [was] overborne and his capacity for self-determination critically impaired because of coercive police conduct," a waiver of *Miranda* rights will be considered voluntary.[13]

The Court has already determined that Allman's initial statement to Kettell was volunteered and did not violate the strictures of *Miranda*. No indecorum hence existed to befoul the *Mirandized* statements Allman made right afterward.

At the time, Allman was 21 years old.[14] He said he understood his rights and spoke freely to Kettell, reiterating what he had earlier disclosed about the gun.[15] He was not threatened of promised anything and no physical or psychological pressure was exerted

---

[10]*See* Dkt. No. 28 at 3.

[11]*See id.*

[12]*See United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether the suspect's will was overborne with regard to either his confession or his *Miranda* waiver).

[13]*Colorado v. Spring*, 479 U.S. 564, 574 (1987).

[14]*See* Mot. Hrg. Ex. 4 at 5 (June 13, 2012).

[15]*See* Mot. Hrg. Tr. 10-11, 20, 36-37, 41.

6

on him. Nor were any deceptive stratagems or trickery used to get him to waive his rights. Significantly, the entire conversation was limited in scope and duration and Allman cooperated as much as he wanted to.[16]

The fact that Allman may have been intoxicated (he registered a .062 on a preliminary breath test administered about four hours after talking to Kettell)[17] did not render his statements involuntary. "[C]ustodial statements are not *per se* involuntary because of intoxication. The standard is whether, by reason of intoxication or other factors, [the suspect's] 'will was overborne' or whether his statements were the 'product of a rational intellect and a free will.'"[18] Even if Allman was over the legal blood alcohol level when he consented to questioning and made statements, this fact did not cause his will to be overborne or undermine his ability to make unconstrained choices. He was sufficiently coherent to "negotiate/bargain" with Kettell[19] and refused to show the agent where he pitched the gun.[20] He never complained of being under the influence and had no detectable odor of alcohol about him.[21] He reacted immediately – dropping to the ground

---

[16]*See id.* at 10-11, 41.

[17]*See* Mot. Hrg. Ex. 7.

[18]*United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976) (internal citations omitted); *see also United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir.), *cert. denied*, 555 U.S. 1019 (2008); *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990), *cert. denied*, 499 U.S. 941 (1991).

[19]*See* Mot. Hrg. Tr. 11, 41.

[20]*See id.* at 11, 20-21.

[21]*See id.* at 31.

– when Sedlmajer's rifle went off and walked and talked without any apparent difficulty. In the final assay, Allman's alcohol consumption did not affect, much less negate, the voluntariness of his waiver.[22]

The evidence of record establishes, to the Court's satisfaction, that Allman voluntarily waived his rights, after being advised of them, and agreed to speak with Kettell. Having chosen to do so, his statements, made following the waiver, are admissible in the Government's case-in-chief at trial.

## SEARCH OF THE VEHICLE

Allman next claims that the warrantless search of the white Grand Prix was unreasonable under the Fourth Amendment. His claim is grounded primarily on his belief that there was no need or basis to search the car for a gun because he had told Kettell that the gun had been thrown out of the car and was somewhere else.

But Allman has no standing to challenge the search of the Grand Prix. He insisted that he was only a passenger in and not the driver of the car.[23] And he did not have an ownership interest in it.[24]

---

[22] *See Gaddy*, 532 F.3d at 788; *United States v. Bordeaux*, 980 F.2d 534, 538 (8th Cir. 1992); *Casal*, 915 F.2d at 1229; *Brown*, 535 F.2d at 427.

[23] *See* Mot. Hrg. Ex. Nos. 4 at 24-25 and 5 at 5-6.

[24] *See* Mot. Hrg. Tr. at 28-29, 32-33, 36.

To contest the validity of a search, a person must have a reasonable expectation of privacy in the place searched.[25] "Fourth Amendment rights are personal and may not be vicariously asserted."[26] A passenger in a private car, who has no possessory or ownership interest in the vehicle does not have a legitimate expectation of privacy in the interior of the vehicle because he does not have the right to exclude others from it.[27]

As someone who was simply riding in the Grand Prix and did not own it, Allman lacked standing to complain about the search under the Fourth Amendment. He repeatedly disclaimed any possessory interest in the car, saying that he was just a passenger and not the driver, and failed to otherwise show that he had a legitimate expectation of privacy.[28] Indeed, after the car was lawfully stopped, he got out and began walking away from it and never once objected to or said anything to manifest a privacy interest in anything inside.[29] Allman thus is without any legal basis to complain about the search.[30]

---

[25] *See Katz v. United States*, 389 U.S. 347, 351-52 (1967).

[26] *United States v. Washington*, 197 F.3d 1214, 1216 (8th Cir. 1999) (*quoting Alderman v. United States*, 394 U.S. 165, 174 (1969) (internal omissions and alternations omitted)), *cert. denied*, 531 U.S. 1015 (2000).

[27] *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978).

[28] *See* Mot. Hrg. Ex. Nos. 4 at 24-25 and 5 at 5-7.

[29] *See* Mot. Hrg. Tr. 7, 35-36, 41.

[30] *See United States v. Barragan*, 379 F.3d 524, 530 (8th Cir. 2004); *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001); *see also United States v. Lee*, 586 F.3d 859, 864-65 (11th Cir. 2009), *cert. denied*, 130 S.Ct. 2392 (2010); *United States v. Duprey*, 895 F.2d 303, 309-10 (7th Cir. 1989), *cert. denied*, 495 U.S. 906 (1990); *State v. Wilson*, 2004 S.D. 33, ¶¶24-
(continued...)

The United States Supreme Court's decision in Brendlin v. California,[31] is not to the contrary. There, the Supreme Court held that passengers have standing to challenge vehicle searches. Brendlin though addressed a passenger's standing to challenge the constitutionality of the initial traffic stop, not the search of the vehicle in which he was riding.[32]

The Eighth Circuit Court of Appeals has made it clear that a person who is a passenger in a vehicle he does not own has no expectation of privacy to contest the search of the vehicle and any of his "effects" found inside.[33] The appeals court's decisions are formidable evidence that it would cast aside the argument that Brendlin overruled, sub silentio, approximately 30 years of Fourth Amendment jurisprudence and restored a passenger's right to challenge the search of a vehicle he otherwise did not have a legitimate expectation of privacy in/or to.[34]

---

[30](...continued)
32, 678 N.W.2d 176, 184-86 (2004).

[31]551 U.S. 249 (2007).

[32]Brendlin, 551 U.S. at 254, 256-58.

[33]See United States v. Crippen, 627 F.3d 1056, 1063 (8th Cir. 2010), cert. denied, 131 S.Ct. 2914 (2011); United States v. Spotted Elk, 548 F.3d 641, 657 (8th Cir. 2008), cert. denied, 129 S.Ct. 1658 (2009); Barragan, 379 F.3d at 530; Green, 275 F.3d at 699; see also United States v. Randolph, 628 F.3d 1022, 1026 (8th Cir.), cert. denied, 131 S.Ct. 3048 (2011).

[34]See e.g. Crippen, 627 F.3d at 1063 (holding that Brendlin only gives a mere passenger in a vehicle the right to challenge the traffic stop, not the search of the vehicle itself); Spotted Elk, 548 F.3d at 657 (rejecting the argument that Brendlin stands "for the proposition that a person who is a passenger in the past retains standing to challenge future searches of someone else's car").

10

This view appears to be in accord with the majority of the courts that have considered the issue. These courts have concluded that *Brendlin* did not modify *Rakas* in the context of a passenger's standing to contest the search of another's vehicle.[35]

Even if Allman has standing to object, a valid basis existed under *Arizona v. Gant*[36] for a search of the Grand Prix incident-to-arrest. The basic rule is that "searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."[37] "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."[38] *Gant* confined the applicability of this exception to two situations. First, "when the arrestee is unsecured and within the reaching distance of the passenger compartment at the time of the search."[39] Second, "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"[40]

Here, Kettell had a reasonable basis to believe that the Grand Prix contained evidence of the offense of Allman's arrest. Allman was arrested tribally for aggravated

---

[35]*See e.g. United States v. Villaverde-Leyva*, No. 1:10-CR-035-RWS/AJB, 2010 WL 5579825 at *15 (N.D. Ga. Dec. 9, 2010) (collecting cases), *report and recommendation adopted by* 2011 WL 121932 (N.D. Ga. Jan. 14, 2011).

[36]556 U.S. 332 (2009).

[37]*Katz*, 389 U.S. at 357 (footnote omitted).

[38]*Gant*, 556 U.S. at 338 (*citing Weeks v. United States*, 232 U.S. 383, 392 (1914)).

[39]*Id.* at 343.

[40]*Id.* (*quoting Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment))

11

assault involving a firearm. The circumstances leading up to the stop of the car, and the information provided to Kettell, were enough to lead him to believe that the occupants of the vehicle were involved in the shooting that had just occurred. Allman's own statements, together with Kettell's plain view observations of the unspent ammunition in the car, gave him ample ground to believe that additional evidence – material to the shooting and the gun itself – might be found in the car.[41]

Allman has cited no authority to substantiate his proposition that Kettell was precluded from searching the car because Allman had tossed the gun before being arrested. Kettell was not obliged to accept Allman's word at face value and dispense with investigating further. This is especially true given that the other two occupants of the vehicle had bolted from it and their whereabouts was unknown.[42] Indeed, with the other occupants on the lamb and the gun not yet located, it may well have been dilatory on Kettell's part *not* to search the vehicle.

At any rate, it was certainly reasonable for Kettell to believe that the gun or other evidence relating to the offense of arrest might be in the car. He therefore was well within his bounds to search the vehicle, incident-to-arrest, for evidence pertinent to the offense.

---

[41]*See United States v. Johnson*, 627 F.3d 578, 584 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 2129 (2011); *United States v. Parker*, 371 Fed. Appx. 749, 750 (9th Cir.), *cert. denied*, 131 S.Ct. 429 (2010); *United States v. Allen*, No. 4:10CR03336 SWW, 2012 WL 604211 at **4-5 (E.D. Ark. Feb. 17, 2012), *report and recommendation adopted* by 2012 WL 604214 (E.D. Ark. Feb. 24, 2012); *see also Randolph*, 628 F.3d at 1025-26; *United States v. Valandra*, No. CR 11-30010-RAL, 2011 WL 3439919 at *10 (D.S.D. Aug. 5, 2011).

[42]*See* Mot. Hrg. Tr. 7-8, 21, 38.

Regardless, the search and seizure were permissible under the automobile exception to the warrant requirement. Under this exception, if there is probable cause to believe a vehicle contains evidence of criminal activity, an officer is authorized to conduct a warrantless search of any area of the vehicle in which evidence might be found.[43] Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that evidence of a crime would be found in a particular place.[44] *Gant* left this exception untouched.[45]

The facts and circumstances known to Kettell provided more than sufficient probable cause for him to conclude that the Grand Prix contained evidence of a crime. Since he had the necessary probable cause, the automobile exception allowed him to search the car.

## MAY 4 STATEMENTS AND THE EXCLUSIONARY RULE

Allman lastly claims that his statements to Breining and Kettell, made during the first interview on May 4, should be suppressed because they were the fruit of the initial un-*Mirandized* statement he unlawfully made to Kettell while walking and of the illegal search of the white Grand Prix. These violations, he says, tainted the voluntariness of his *Miranda*

---

[43]*See United States v. Ross*, 456 U.S. 798, 820-21 (1982).

[44]*See Untied States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000).

[45]*See Gant*, 556 U.S. at 346 (recognizing the exception as one of the "[o]ther established exceptions to the warrant requirement [that] authorize a vehicle search under additional circumstances when . . . evidentiary concerns demand"); *see also United States v. Webster*, 625 F.3d 439, 445-46 (8th Cir. 2010).

waiver and made his predawn statements to Breining and Kettell involuntary under the Fifth Amendment.

Allman's exclusionary rule claim can be disposed of in rather short order. Because Kettell did not violate Allman's Fourth or Fifth Amendment rights – when talking to him or in connection with the search of the Grand Prix – there is no "poisonous tree" for any "tainted fruit" to grow or fall from. Put another way, Kettell did not say or do anything following the vehicle stop that spilled over to and infected the propriety of the ensuing statements Allman made that night. And given the circumstances surrounding the uttering of these statements (which were tape recorded), there is no doubt that he was expressly informed of his *Miranda* rights and knowingly, voluntarily and intelligently waived them before being interviewed and incriminating himself.[46] It follows then that Allman's *Wong Sun*[47] claim is without merit and his early morning statements to Breining and Kettell may be used as evidence against him at trial.

## CONCLUSION

Agents did not violate Allman's Fourth and Fifth Amendment rights or the dictates of *Miranda* so as to require the suppression of physical evidence (the nine-millimeter rounds of ammunition) and statements he seeks to exclude before and after his arrest. His un-*Mirandized* statement to Kettell while en route to the patrol car, was spontaneous and

---

[46]*See* Mot. Hrg. Ex. 4 at 1-4.

[47]*Wong Sun v. United States*, 371 U.S. 471 (1963).

not the product of custodial interrogation. The warned statements, that followed, were made after Allman knowingly, voluntarily and intelligently waived his *Miranda* rights. He has no standing to make a Fourth Amendment challenge to the search of the white Grand Prix because he was simply a passenger and had no legitimate expectation of privacy in it. But even if he has the right to object, the search was authorized under the incident-to-arrest and automobile exceptions to the warrant requirement. No basis exists to exclude the statements he made, hours later at the station house, as "tainted fruit" or otherwise, under the Fifth Amendment. Allman is not entitled to any of the relief prayed for in his motion.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Allman's Motion to Suppress Statements and Evidence[48] be denied in its entirety for the reasons, and based on the authorities, stated herein.

## NOTICE

An aggrieved party must file written objections, within 14 calendar days, to challenge this Report before the assigned United States District Judge.[49]

---

[48] *See* Dkt. No. 27.

[49] *See* 28 U.S.C. §636(b)(1).

Dated this 29th day of June, 2012, at Pierre, South Dakota.

BY THE COURT:

/s/ Mark A. Moreno
_____
**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**